1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  DAVID ROGER WILSON,                    No. CIV S-03-0703-MCE-CMK-P

12              Petitioner,

13        vs.                              <u>FINDINGS AND RECOMMENDATIONS</u>

14  MICHAEL YARBOROUGH, et al.,

15              Respondents.

16  _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18  habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition for

19  a writ of habeas corpus (Doc. 1), filed on April 4, 2003, respondent's answer (Doc. 9), filed on

20  June 6, 2003, and petitioner's reply (Doc. 12), filed on August 25, 2003.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

# I. BACKGROUND

A.   **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

**The October incident**

At about 11:00 p.m. on October 15, 1999, Roseville Police Officer Wayne Neidig, in a patrol car, saw defendant and a female passenger on a motorcycle going through an intersection; because the passenger did not have a helmet, Neidig decided to pull defendant over.  Following defendant, Neidig saw him speed up to 45 miles per hour in a 25-mile-per-hour zone.  Neidig called for backup.

Defendant and the passenger (his girlfriend Margaret Wesley who later became his wife) stopped and dismounted in the parking lot of defendant's apartment building; Wesley walked up the stairs as Officer Neidig approached.  Neidig asked for defendant's license; he responded "[W]hat the fuck for now?"  Defendant then produced a temporary motorcycle license.  Neidig began a records check (which showed defendant's license had expired).  Defendant started to walk away; Neidig told him to come back.  Defendant said Neidig was "fucking harassing him," then asked him "what [] the fuck" he was going to do and started to walk away again.  Neidig ordered him to come back.  Defendant asked if he was under arrest.  As Neidig started to write a citation, defendant walked away again.  Neidig tried to grab his shoulder, but defendant pulled away and kept walking toward the stairway.

Officer Goucher, who had just arrived, joined Officer Neidig's pursuit of defendant.  The officers caught up to him on the stairs, grabbed him, and struggled with him for 20 or 25 second until they subdued and handcuffed him.  In the struggle, Neidig hit his head on a railing; he suffered cuts and scrapes over his eye and on his elbow and hand.  Goucher radioed for more help.

Defendant stopped struggling once handcuffed, but continued to swear at the officers.  Officer Neidig smelled alcohol on his breath.  Neidig escorted defendant to the patrol car, while other officers went upstairs to talk to Wesley.  As Neidig unlocked the patrol car, defendant kneed him in the groin.  Officer Goucher helped Neidig put defendant in the patrol car.

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

Inside the patrol car, defendant kept on swearing at Officer Neidig, said he would kill him if freed from handcuffs, and threatened to "hunt [him] down" once out of jail. Defendant claimed he was an expert in Tae Kwon Do who could kill Neidig with one punch. Defendant also kicked out the back window of Officer Neidig's car.

At the Roseville police station, Officer Goucher searched defendant and found a canister containing marijuana and a pipe in his pockets. Defendant's blood, drawn at 12:23 a.m., showed a blood alcohol level of .13 percent.

Defendant's stepson and ex-wife testified that Officer Neidig had a grudge against defendant from a prior incident. Wesley (now Margaret Wilson), who was arrested in the incident for public drunkenness and refusal to identify herself, testified that she and defendant had drunk a beer or two apiece on the night of October 15, that she was wearing a helmet but it blew off as they rode home, and that the police started or provoked any altercation with defendant.

**The November incident**

In the early evening of November 2, 1999, David Peterson, Donald Hess, and Norman Moran were in Riolo's Bar in Roseville, drinking beer and shooting pool. They had shared a 12-pack of beer in the park earlier in the day. (Peterson admitted that he drank heavily every day). Peterson was wearing a neck brace due to a recent accident.

Defendant challenged Peterson to a game a pool; Peterson accepted. They agreed on rules which barred "Slop shots" (hitting the ball into the pocket without calling it first).

Defendant made a "slop shot." When Peterson protested, defendant hit him in the back of the head with a pool cue. The cue broke on Peterson's neck brace. After falling to one knee, Peterson got up and hit defendant across the shoulders with his own cue. Defendant hit Peterson across the left eye with another cue, which broke. As Peterson came forward, defendant threw a pool ball at Peterson's mouth, knocking out two teeth and breaking five more. Peterson then left the bar.

Moran did not see the fight start, but heard a whack and turned to see Peterson on his knees. When Moran and Hess got up and moved to help Peterson, defendant knocked Moran out by hitting him on the forehead with a cue. Swinging his cue like "a kung fu artist," defendant then hit Hess several times on the head; Hess "[saw] stars." (footnote omitted).

Peter Riolo, who knew defendant as "Dragon," saw him hit Peterson twice with a pool cue and throw a pool ball that hit him in the mouth; he also saw defendant hit Moran and Hess with a cue. A woman with defendant told him to leave; before doing so, he kicked someone, then took a pool ball and hit Hess and Moran on the head, telling them to

"lay there and die."

Hocum, who also knew defendant as "Dragon," saw him come in with a blond woman and have two drinks before the assault began; she also saw the future victims drink several pitchers of beer. She heard defendant say to Peterson "play the fucking game," then saw him assault all three victims. She finally saw defendant kick the fallen Moran while telling him to "die," then leave on his motorcycle with his companion.

A police officer responded to the 911 call and interviewed eyewitnesses, including Riolo and Hocum. He saw broken glass, puddles of blood, and at least three broken pool cues.

All three victims suffered substantial injury. As mentioned, Peterson suffered lost and broken teeth. Moran suffered lasting numbness on top of his head. Hess was treated at the hospital for head, ear, and lip lacerations and a dislocated finger; he also experienced blindness in one eye, residual headaches, and dizziness.

Defendant's wife, who was with him at the bar, testified that Peterson was the initial aggressor. After defendant subdued him in self-defense, Hess and Moran came at defendant and cornered him. Moran threw a pool ball at him; he caught it and threw it back. When the bartender called the police, defendant and his wife left.

Defendant did not testify.

## B.    Procedural History

Petitioner was convicted following a jury trial of: (1) three counts of assault with a deadly weapon with infliction of great bodily injury, in violation of California Penal Code §§ 245(a)(1), 1192.7 (c)(8), and 12022.7(a); (2) three counts of battery with serious bodily injury with personal use of a deadly weapon, in violation of California Penal Code §§ 243(d), 1192.7(c)(23), and 12022(b)(1); (3) one count of misdemeanor battery upon a peace officer, in violation of California Penal Code §§ 242(b) and 243(b); (4) one count of misdemeanor resisting arrest, in violation of California Penal Code § 148(a); (5) one count of misdemeanor vandalism, in violation of California Penal Code § 594(b)(4); (6) one count of misdemeanor driving under the influence of alcohol, in violation of California Vehicle Code § 23152(a); (7) one count of misdemeanor driving while having a .08% or higher blood alcohol level, in violation of California Vehicle Code § 23152(b); (8) one count of misdemeanor driving without a license, in

4

1   violation of California Vehicle Code § 12500(a); and (9) one count of misdemeanor possession

2   of marijuana, in violation of California Health & Safety Code § 11357(b).  The trial court also

3   found as true the allegation that petitioner had two prior serious felony convictions within the

4   meaning of California Penal Code § 667.  Petitioner was sentenced to an aggregate indeterminate

5   term of 33 years to life.

6          Petitioner's conviction and sentence were affirmed by the California Court of

7   Appeal in a reasoned opinion issued on April 10, 2002, as modified on denial of rehearing on

8   May 6, 2002.  The California Supreme Court denied review without comment on June 26, 2002.

9

10                          **II.  STANDARD OF REVIEW**

11          Because this action was filed after April 26, 1996, the provisions of the

12   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

13   applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

14   (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

15   does not, however, apply in all circumstances.  For instance, when the state court reaches a

16   decision on the merits, but provides no reasoning to support its conclusion, a federal habeas

17   court independently reviews the record to determine whether the state court clearly erred in its

18   application of Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

19   Similarly, when it is clear that a state court has not reached the merits of a petitioner's claim,

20   because it was not raised in state court or because the court denied it on procedural grounds, the

21   AEDPA deference scheme does not apply and a federal habeas court must review the claim de

22   novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not

23   apply where Washington Supreme Court refused to reach petitioner's claim under its

24   "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that,

25   where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not

26   apply because evidence of the perjury was adduced only at the evidentiary hearing in federal

                                     5

court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to

1    determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

2    1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

3    case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

4    is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

5            A state court decision is reviewed under the far more deferential "unreasonable

6    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

7    unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

8    123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

9    suggested that federal habeas relief may be available under this standard where the state court

10   either unreasonably extends a legal principle to a new context where it should not apply, or

11   unreasonably refused to extend that principle to a new context where it should apply.  See

12   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

13   decision is not an "unreasonable application of" controlling law simply because it is an

14   erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade,

15   123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot be found

16   even where the federal habeas court concludes that the state court decision is clearly erroneous.

17   See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper

18   deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As

19   with state court decisions which are "contrary to" established federal law, where a state court

20   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

21   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# III.  DISCUSSION

Petitioner raises the following claims: (1) the trial court erred by consolidating for trial two inflammatory cases with no cross-admissible evidence; (2) the trial court erred by excluding evidence that would have undermined the credibility of the prosecution's key witness; (3) the trial court erred by instructing jurors pursuant to CALJIC No. 17.41.1; and (4) the trial court erred by answering a legal question posed by deliberating jurors without notifying counsel. Respondents concede that these claims are exhausted.

## A.     Consolidation of Trials

The state court accurately described petitioner's claim as follows:

> Petitioner contends the trial court erred prejudicially by granting the prosecution's motion in limine to consolidate the October and November cases for trial over defendant's opposition.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas relief does not lie for state law errors, ". . . misjoinder would rise to the level of a constitutional violation only if it results in prejudice to great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  In order to raise such a

claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).  The Ninth Circuit has elaborated on this standard in the context of claims of misjoinder.  The federal habeas court must decide whether ". . . the trial on a particular count was fundamentally unfair in light of [the trial] court's joinder with one or more other charges." Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

As to this claim, the state court evaluated whether the trial court's joinder of charges for a single trial was correct as a matter of California state law.  The state court went on to say: "However, even if the ruling was correct when made, we must reverse on a showing that consolidation denied due process to Petitioner at trial."  In concluding that joinder did not prejudice petitioner, the state court stated:

> Petitioner argued in limine that consolidation would prejudice him because if the jurors found he got into an altercation with the police in October, they could not fairly consider his self-defense claim as to the November incident.  The trial court acknowledged that possibility, but found it outweighed by "the nature of the charges and the nature of the conduct," including the incidents' close proximity in time (roughly two weeks apart, the second occurring while Petitioner faced charges from the first).

> In deciding whether the trial court properly exercised its discretion to join offenses, we consider whether some of the charges are particularly likely to inflame the jury against the defendant, whether the prosecution has joined a weak case with a strong case (or another weak case) creating a "spillover" effect from one to the other, and whether any of the joined charges carry the death penalty.  (citations omitted).  Cross-admissibility, though normally sufficient to dispel the inference of prejudice, is not required.  (citations omitted).

> Based on these criteria, we see no abuse of discretion from the consolidation here.  First, neither case was more inflammatory than the other; both involved assaultive behavior, and the injury Petitioner inflicted on the victims in November was no greater than that which he threatened (and might have accomplished if not restrained) in October.  Second, neither case was significantly stronger or weaker than the other.  Third, none of the charges carried the death penalty.

///

1               Petitioner's argument in limine that the jury would not be able to
2    consider his conduct in November apart from that in October lacked
     persuasive force because the facts of the incidents differed sharply.  The
3    fact that the jury acquitted Petitioner of the felony offense charged in
     count 7 . . . demonstrates that the jury was able to evaluate the two cases
4    independently.

5               Nor does the analysis change when we consider the outcome of the
     trial.  Both consolidated cases came down to credibility contests pitting
6    Petitioner's witnesses against the alleged victims and other eyewitnesses.
     If Petitioner's main witness, his wife, proved not credible, it was not
7    because of the consolidation but because she simply did not tell believable
     stories as to either incident.  Consolidation did not cause gross unfairness
8    to Petitioner or deprive him of due process.

9            Because the state court considered whether joinder deprived petitioner of due

10   process, it applied the correct federal legal standards as announced by the Supreme Court in

11   United States v. Lane.  Therefore, this court must review under the more deferential

12   "unreasonable application of" standard.  In addition to the state court's analysis, with which this

13   court agrees, the record shows that the trial judge instructed the jury that each count is a separate

14   crime, and that each must be decided separately.  This precludes any prejudice.  See Weeks v.

15   Angelone, 528 U.S. 225, 234 (2000); cf United States v. Johnson, 820 F.2d 1065, 1071 (9th Cir.

16   1987).  On this record, this court cannot say that petitioner's trial on any particular count was

17   fundamentally unfair as a result of the joinder.

18        **B.**    **Exclusion of Evidence**

19           Petitioner claims that the trial court improperly excluded evidence that

20   prosecution witness David Peterson had two 1984 prior felonies for burglary and grand theft, as

21   well as a 1996 conviction for carrying a concealed knife.  Specifically, petitioner asserts that

22   exclusion of this evidence, which would have tended to impeach witness Peterson's testimony,

23   violated his right to confront witnesses against him.

24   / / /

25   / / /

26   / / /

1    As with the preceding claim, this claim is based on alleged error of state law; in

2    particular an erroneous ruling to exclude potential impeachment evidence.  Because federal

3    habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for

4    federal habeas relief if it renders the state proceedings so fundamentally unfair as to violate due

5    process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d

6    971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see

7    also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   As to whether a state court's

8    evidentiary ruling to exclude impeachment evidence violates the Confrontation Clause, the

9    Supreme Court has ruled that the Confrontation Clause guarantees only the opportunity for

10   effective cross-examination, not whatever cross-examination the defense would like.  See

11   Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  There is no Confrontation Clause violation

12   unless the prohibited cross-examination might reasonably have resulted in a significantly

13   different impression of the witness' credibility.  See id. at 680.

14   As to this claim, the state court stated:

15        The prosecution moved in limine under Evidence Code section 352
          (§ 352) to preclude Petitioner from impeaching Peterson with his 1984
16        out-of-state felony convictions for third degree burglary and grand theft.
          The trial court granted the motion, ruling that though the crimes showed
17        moral turpitude they were "quite old" and "remote," the out-of-state rap
          sheets told little about them, and it "would be maybe a little too confusing
18        to the jury in that they are being asked to evaluate someone's credibility
          based on something that happened 16 or 17 years ago.
19

20   In a footnote, the state court observed that the court denied similar motions with respect to two

21   other victims.  In particular, petitioner was allowed to impeach Moran and Hess with evidence of

22   their prior convictions.

23   The state court then evaluated whether the trial court's exclusion of evidence of

24   witness Peterson's prior convictions was proper under California law.  After concluding that the

25   trial court did not abuse its discretion under California Evidence Code § 352, which allows for

26   exclusion of evidence where its probative value is substantially outweighed by its tendency to

11

1   prejudice a party or confuse the jury, the state court considered whether the prohibited cross-

2   examination might have resulted in a different impression of witness Peterson's credibility.  In

3   concluding that it did not, the state court reasoned as follows:

4               Petitioner was able to attack Peterson's credibility by showing he
            was an alcoholic who had had a lot to drink on the day of his conflict with
5           Petitioner.  He was also able to impeach Peterson's companions with
            felony convictions.  The jury could not have believed that the victims
6           were choirboys.  Moreover, the details of the fight were described by
            independent witnesses Peter Riolo, the bar's owner's son, and Frankie
7           Hocum, the bartender on duty.  It is not reasonably probable that
            Petitioner would have obtained a more favorable result had evidence of
8           Peterson's 1984 felony convictions been admitted.  (citations omitted).

9   In its order modifying the original opinion on denial of rehearing, the state court addressed

10  petitioner's federal constitutional rights:

11              In his reply brief, defendant contends the exclusion of the prior
            convictions violated defendant's federal constitutional right to cross-
12          examine the witness, Peterson.  We reiterate that we see no error in the
            trial court's ruling.  Even assuming error, and even assuming the
13          exclusion of the priors violated some federal constitutional right of
            defendant's, we find the error harmless beyond a reasonable doubt on the
14          whole record.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17
            L.Ed.2d 705, 710-11.) [sic].
15

16              As a threshold matter, this court notes that the state court's original opinion

17  appears to only address witness Peterson's 1984 convictions.  There is no mention of the 1996

18  conviction for carrying a concealed knife.  The court observes that, in his opening brief on direct

19  appeal, petitioner only raised the 1984 convictions.  In petitioner's reply brief on direct appeal,

20  addressed by the state court in its modified opinion, petitioner also only raised the 1984

21  convictions.  The first referernce to witness Peterson's 1996 conviction is found in petitioner's

22  brief on petition for review by the California Supreme Court.  The California Supreme Court

23  denied review without comment or citation.

24  / / /

25  / / /

26  / / /

1    In the interests of comity and federalism, this court must first determine whether

2 the state court has considered whether exclusion of the 1996 conviction resulted in constitutional

3 error.[2]  See Lambrix v. Singletary, 520 U.S. 518, 524 (1997) (holding that the question of

4 whether petitioner has procedurally defaulted on a particular claim must be addressed before

5 reaching the merits).  In resolving this question, the court notes that the California Supreme

6 Court denied review without comment or citation.  Specifically, the California Supreme Court

7 did not cite to any authority which would suggest that it applied a procedural bar.  Because the

8 last state court to address petitioner's claims did not clearly and expressly invoke a state

9 procedural bar, this court may consider the merits.  See Coleman v. Thompson, 501 U.S. 722,

10 735 (1991).  This is consistent with the rule that, in California, unexplained summary denials by

11 state courts are deemed adjudications on the merits, and not procedural rulings.  See Hunter v.

12 Arpaio, 982 F.2d 344, 348 (9th Cir. 1992).  Therefore, this court concludes that the procedural

13 default doctrine does not bar consideration of the merits of petitioner's claim as to witness

14 Peterson's 1996 conviction.

15    As to the merits, the court must next determine what the state court's decision

16 actually was.  As discussed above, the last reasoned state court opinion is from the California

17 Court of Appeal.  In the modified decision, the state court held that petitioner's federal

18 constitutional rights were not violated because any error was harmless beyond a reasonable

19 doubt.  The California Supreme Court – which was presented with the issue of the 1996

20 _____

21    [2]    It is not inappropriate for this court to address procedural default sua sponte when
the default is obvious from the face of the petition and if recognizing the default could further
22 the interests of comity and federalism.  See Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir.
1998); but see Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003) (holding that the district
23 court improperly applied procedural default to bar a claim where the respondent had not relied
on procedural default, and where the default was not obvious from the face of the petition).  In
24 this case, the default is obvious on the face of the petition.  In particular, the court notes that,
while petitioner clearly raises the 1996 conviction in the body of his petition, the attached
25 opening brief on direct appeal to the California Court of Appeal clearly shows that petitioner
only raised the 1984 convictions.  Moreover, as discussed further in these findings and
26 recommendations, the court does not apply the procedural default doctrine to bar federal habeas
review as to the 1996 conviction.

conviction – denied review on the merits.  This court may, therefore, assume that the California

Supreme Court's denial was based on the same reasoning as that of the Court of Appeal.  Thus,

the issue of the 1996 conviction was resolved by the state court based on a determination that

any error was harmless.

In light of the foregoing, the court finds that the state court determined that, as to

the 1984 convictions, there was no error because the prohibited cross-examination would not

reasonably have resulted in a significantly different impression of witness Peterson's credibility.

As to all of witness Peterson's convictions, the state court determined that any federal

constitutional error was harmless beyond a reasonable doubt.  Given that the state court applied

the correct legal rules, this court must review under the deferential "unreasonable application of"

standard.

As discussed above, federal habeas relief may be available under this standard

where the state court either unreasonably extends a legal principle to a new context where it

should not apply, or unreasonably refused to extend that principle to a new context where it

should apply.  Neither occurred in this case.  Applying well-established federal law, the state

court determined that, even if there was error, any such error was harmless.  This court is

required to defer to the state court's conclusion.  See Lockyer, 123 S.Ct. at 1175.

For all these reasons, petitioner is not entitled to habeas relief on this claim.[3]

**C.    Jury Instruction Pursuant to CALJIC No. 17.41.1**

Petitioner claims that the trial court's jury instruction pursuant to CALJIC No.

17.41.1 chilled speech by urging jurors to inform on one another.  Specifically, petitioner asserts

that the instruction ". . . makes jurors worry that their views and ideas may be considered

'improper' and therefore reportable and therefor [sic] better left unsaid during deliberations."

---

[3]    As a sufficiently independent reason to consider the merits as to the 1996 conviction, the federal court may skip a complicated procedural default question and proceed to deny on the merits.  See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).

1        In general, to warrant federal habeas relief, a challenged jury instruction "cannot

2    be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

3    process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317

4    (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

5    must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

6    conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp,

7    414 U.S. at 147).  In making its determination, this court must evaluate the challenged jury

8    instructions "'in the context of the overall charge to the jury as a component of the entire trial

9    process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

10    1984)).

11        In petitioner's case, the trial court instructed the jury pursuant to CALJIC 17.41.1

12    as follows:

13        The integrity of . . . the trial requires that jurors at all times during
    your deliberations conduct themselves as required by the instructions.

14

15        Accordingly, should it occur that any juror refuses to deliberate or
    expresses an intention to disregard the law or to decide the case based on
    penalty or punishment or any other improper basis, it is the obligation of

16        the other jurors to immediately advise the Court of the situation.

17    At the heart of petitioner's claim is the notion that the phrase "or any other improper basis" is so

18    vague ". . . that men of common intelligence must necessarily guess as to its meaning and differ

19    as to its application . . . ."  The state court denied this claim because, even assuming some

20    constitutional error, petitioner had failed to demonstrate prejudice pursuant to Chapman v.

21    California, 386 U.S. 18 (1967).  Because the state court applied the correct federal rule of law –

22    that prejudice must be shown – this court must review the state court's determination under the

23    "unreasonable application of" standard.  Under this standard, it follows logically that, if

24    petitioner was not prejudiced by the instruction, the state court's decision cannot have been an

25    unreasonable application of federal law.

26    / / /

1    As outlined above, petitioner must demonstrate that the challenged instruction so

2  infected the entire trial that the conviction violates due process.  Whether petitioner has made

3  this showing must be evaluated in the context of the other jury instructions.  In this case,

4  CALJIC No. 17.41.1 was given in conjunction with the following other instructions:

5    The People and the defendant are entitled to the individual opinion
       of each juror.  Each of you must consider the evidence for the purpose of
6      reaching a verdict, if you can do so.

7      Each of you must decide the case for yourself, but should do so
       only after discussing the evidence and instructions with the other jurors.
8

9      Do not hesitate to change an opinion if you're convinced it is
       wrong.

10     However, do not decide any questions in a particular way because
       a majority of the jurors or any of them favor the decision.
11

12     Do not decide any issue in this case by the flip of a coin or by any
       other chance determination.

13     The attitude and conduct of jurors at all times are very important.
       It's rarely helpful for a juror at the beginning of deliberations to express
14     an emphatic opinion on a case or to announce a determination to stand for
       a certain verdict.
15

16     When one does that at the outset a sense of pride may be aroused,
       and one may hesitate to change a position even if shown that the opinion
       is wrong.
17

18     Remember that you are not partisans or advocates in the matter,
       but you are impartial judges of the facts.

19     When considered in light of these instructions – which outline the proper bases

20  for the jury's decision –  it must have been clear to the jurors in petitioner's trial that the phrase

21  "or any other improper basis" did not refer to their judgment as to the facts.  The only conduct

22  potentially chilled by the challenged instruction would be conduct otherwise prohibited by law,

23  such as jury nullification or deciding the facts based on possible punishment.  Therefore, this

24  court concludes that petitioner was not prejudiced and, as a result, that the state court's

25  determination of this claim was not an unreasonable application of federal law.

26  / / /

1        **D.    <u>Jury Questions</u>**

2                Petitioner claims that he was denied his right to counsel when the trial court

3    answered a question from the deliberating jurors without notifying or consulting with counsel.

4    Petitioner asserts that the response the trial court gave to the question may have coerced jurors

5    into abandoning their convictions in order to reach unanimous verdicts.

6                The orderly conduct of a trial by jury entitles the parties to be present in person or

7    by counsel at all proceedings from the time the jury is empaneled until it is discharged after

8    rendering the verdict.  <u>See</u> <u>Rogers v. United States</u>, 422 U.S. 35, 38-39 (1975).  In <u>Rogers</u>, the

9    Supreme Court recognized that, in a criminal trial, a note from the trial court directing the jury

10   that it must find the defendant either guilty or not guilty did not justify exception to the rule.  <u>See</u>

11   <u>id.</u>  The Court reasoned that such a direction essentially introduced a new instruction that the

12   jury was required to reach a verdict, thus precluding the jury from deadlocking, and that the

13   parties were not afforded an opportunity to be heard as to this new instruction.  <u>See</u> <u>id.</u>; <u>see also</u>

14   <u>Jenkins v. United States</u>, 380 U.S. 445 (1965).  In sum, the general rule is that counsel must be

15   present until the jury is discharged.  However, violation of this rule is harmless so long as the

16   trial court, in response to a jury question, does not inject a new instruction which is erroneous as

17   a matter of law (such as an instruction that the jury must reach a verdict) or as to which the

18   parties have not had an opportunity to be heard.  <u>See</u> <u>id.</u>.

19               In concluding that any error was harmless, the state court reasoned as follows:

20               On the second day of deliberations, the jury sent the trial court a
     note which read: "De we need a unanimous vote both 'guilty and not
21   guilty.'?"  Without contacting counsel, the court wrote "Yes" on the note
     and initialed it, then sent the note back to the jury.  Approximately two
22   hours later, the jury returned its verdicts.

23                                    * * *

24               The trial court's one-word answer to the jury's question merely
     reiterated the correct instruction the court had already given twice
25   pursuant to CALJIC No. 17.50: "[i]n order to reach a guilty or a not guilty
     verdict you must reach a unanimous decision; that is, 12 would have to
26   vote guilty or not guilty in order to make that finding.[¶] . . . [¶] In order to

                                            17

1  |  reach verdicts all 12 jurors must agree to the decision and to any finding
2  |  you have been instructed to include in your verdict." It did not give the
   |  jury any new or different instruction on the law. Thus it could not
3  |  prejudiced [sic] defendant. (citations omitted).

4  This court agrees and, therefore, cannot say that the state court's decision was an unreasonable

5  application of federal law.

6

7                          **IV.  CONCLUSION**

8          Based on the foregoing, the undersigned recommends that petitioner's petition for

9  a writ of habeas corpus be denied and that judgment be entered accordingly.

10         These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

14  Findings and Recommendations."  Failure to file objections within the specified time may waive

15  the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17  DATED:   June 1, 2006.

18

19                                          Craig M. Kellison
                                           **CRAIG M. KELLISON**
20                                          UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26